Our second case is 23-2310, Dominion Coal Corporation v. DOWCP et al. Ms. Parker, whenever you're ready. Good morning, Your Honors. May it please the Court, my name is Charity Barger. I represent the petitioner Dominion Coal Corporation and this appeal of an award of federal black loan benefits. It's important to remember at the outset, Your Honors, that this claim was originally denied by L.J. McGrath. It was only after the Board remanded this claim with instructions that the ALJ found that there was enough evidence to establish complicated pneumoconiosis. Our contention is that the Board exceeded its authority by usurping the ALJ's role when it was bound to uphold the ALJ's original denial, so long as it was supported by substantial evidence, which we contend that it was. Can I just ask you a quick question? Absolutely, Your Honor. I just want to give you a chance to explain why we have jurisdiction to review the non-final remand order, and I guess if you would, why we can, but also kind of why we should. Okay. So under 5 U.S.C. 706, this review in court is meant to set aside any agency order. This arbitrary capricious is supposed to review all the entire record, and specifically looking for prejudicial error. So the original, the only time that we come before this Court is when we have a final decision, and so when the Board remanded the ALJ's original denial, and then the ALJ, of course, awarded, then it was at that time that we were able to come back before this Court to say that that original denial was actually supported by substantial evidence, and that the Board was bound to find, uphold that denial. And the reason that is is because Federal Black Lung is different from other agencies. I believe that some agencies are allowed to do an independent review of the record, which Federal Black Lung, that is not true. The only time that it's able to overturn any findings of conclusion, any findings of fact or conclusion of law, are if they're not supported by substantial evidence, and that's, the denial was supported by substantial evidence. This case is probably different from cases that have come before this Court because legal pneumoconiosis is often involved, and that's a statutory pneumoconiosis. Clinical pneumoconiosis or complicated pneumoconiosis is a form of clinical pneumoconiosis, which is medical pneumoconiosis, and I know I keep saying that word a lot, but what we depend on in medical pneumoconiosis is the experts. The experts are meant to tell us what pneumoconiosis is. So the problem is, at least, and I do like you to continue with Judge Harris's question in terms of whether that was, it is our propriety to review what internal remands process back down for the ALJ to consider and then come back. Even if so, I mean, ultimately, we've got the whole case before us. If it was error, maybe it was or may not, we can determine that now. But ultimately, when you get into the question of whether this is complicated pneumoconiosis or simple, if you look at what the ALJ initially did, looked at both sides and said, well, this doctor says this. One says it's simple. One says it's complicated. This says that. And he says that's an equipose. And so all things equal, you don't get a presumption. And all they said is, no, you need to go back and give us a basis for seeing this. In other words, you don't just get to say the doctor said this conclusion and that conclusion and say they're all equal. You tell me what is it about those opinions that when you look at them, you make those determinations. And I thought that's exactly what the ALJ did when they took it back. But you have a problem with that because you say the ALJ can simply say you've got five on this side and five on that side, and we're in equipose, and therefore you get no presumption. No, that's not what I'm saying, Your Honor, because that's a mere counting of heads, and that's not what I'm saying. What I'm saying is that the medical experts are the ones that have to explain this type of stuff to us. Now, when the ALJ originally denied, he looked at Dr. Adcox and said, you know, Dr. Adcox believed complicated pneumoconiosis is not, that pseudoplaque formations are not complicated pneumoconiosis. And ALJ, Dr. Adcox explained that well to the ALJ. Now, the board might have thought the ALJ did not go enough into it, but what they're asking is that the ALJ. But all the ALJ said, as I read the ALJ opinion, was like Judge Wynn said, 50-50 equipoise, and one is longer. One guy said more, but he didn't get into the content of the explanation at all. Is that sufficient? Just assume for a minute, make it hypothetical. An ALJ says the evidence is an equipoise, but one expert said more. Is that enough? Well, I mean, I think that there are situations where the evidence is balanced. You have like, Judge, is it enough for a tiebreaker that one guy used more words in his explanation? Well, if he was more persuasive with his explanation. But if all the ALJ says is one explanation is longer. One's more explanatory, yes, and that's the point, is that we have complicated pneumoconiosis, and the medical experts have to explain to us what it is. Dr. DuPont didn't give any explanation, just said this is one centimeter, greater than one centimeter, and therefore it's complicated pneumoconiosis. I'll give you an example more extreme. It's not just longer, but expert A's report is five pages, expert B's report is 10 pages. I like 10 pages. I'm going with that without considering what's in the 10 pages. No, I think that, yes, that is a little bit more extreme, no. Isn't that what he did here? Well, I think that the ALJ, I think that what the ALJ was faced with was two experts that have equally different reasoning, but to go and say that you have to go back as an ALJ and say where is the location of the nodule? What is the size of the nodule? What medical expertise does an ALJ have to do that? And when the board specifically said that you have to look and see if the nodule in the pleura is complicated pneumoconiosis because we have determined before that that's true and that's not true. There's nothing in the regulations that say a pseudoplaque is complicated pneumoconiosis. We have to depend on the experts, and if the experts haven't given enough of an explanation, I believe there's a way for the ALJ to ask for additional information on that. But that's not, even the ALJ's award of benefits does not really say anything other than what the board said, which is that a pleura, it's okay to be complicated pneumoconiosis, which is not in the regulations. Well, you know that first issue you did here, deals with the merits, and whether this is simple, complicated. You're right. It goes to what the experts actually say. You actually give a better explanation than the ALJ gave the first time. That's the problem we're having. Okay. ALJ was very simplistic, and that's why they sent it back to them. If he said what you said, maybe that would have been okay, but that's not, and maybe the record did show that that's not his decision on it. But you can stay with this, but really the issue in this case is probably that constitutional issue you got in here on that ALJ. That's an interesting issue. It is. It is one that is at the focal point. I don't know how much time you spent on it or whether you want to keep doing on this, but I, you know, because when you look at what we did in the previous case here, it says, okay, we're not going to get to it because you can't see what the harm. Right. And I'm not sure Collins did that, but we're bound by that case. We're bound by our case here. We can't change King, okay? Right, right. I'm not sure what I said, because Collins actually decided the constitutional issue there. It didn't just, and then it said there's no harm for you, but insofar as that constitutional issue, that FHA director, whatever, was gone. I mean, and everybody else like him because then the powers were there. It said it was unconstitutional. I don't know what we do here or whether that is still with us, because I think your case is just like the one that was here previously. You can't show harm if we rely upon that. Yes, yes. I know the solicitor will get up and say that McMillan is longstanding precedent here, and so on all fours it is exactly the same as King versus K&R contractors. And what we said is that really, I'm sorry, I'm getting dry mouth here. Well, it is, isn't it? It is on all fours with King. The harm that we stated in our briefing was that the proceeding itself is a harm. And I guess the court in King seemed to not believe that that was enough and that what we needed.  That's why you're here. That's why you have standing. Right. You can show injury for standing purposes. But the harm in this instance deals with the causation type thing. It didn't cause you anything. That's a different type of harm. Yes, and Collins was a very unique situation, because you're talking about retrospective and prospective, and it's very difficult to determine what relief was being looked at in Collins. Now, what Collins did that this court did not do is that it did decide the constitutional question first. And so what we have here is we don't have conflicting decisions on the constitutional question, because King never actually addressed. It said, it jumped to the remedy and said, because there's no remedy, we can't address the constitutional question. I don't think it said we can't address the constitutional question. I think it said we're not going to. Right. Right. Right. And what I've known, and I know my, I'm sorry, I know that I have a limited experience in this area, but what I have seen, even in Collins, is that that question is meant to be addressed first, and then the remedy is next, and that the only way you can't. Well, you can't know that, because, I mean, you're dealing with, look at the Section 1983 cases. You can do an appearance, and you can say it wasn't clearly established, and that would reach the constitutional issue. Sort of similar here. The difference here is we don't have a Pearson case. We got that case of Supreme Court Collins. Court did address the constitutionality. Then for remedy purposes, it says you can't show no harm.  The constitutional question was addressed there. Right. I assume you want us to address the constitutional issue. I do want you to. Yes, that is what I'm asking the court. Why should we do that, since you didn't raise it until after the ALJ got reversed on remand? You waited until the decision went against you, and then you raised forfeiture all of a sudden. It was my understanding, and maybe I can look at that quick, but we did file a motion to have the ALJ removed, and in that motion we did. When did you file that? I'm sorry. Let me bring this out here. Maybe you can come back on rebuttal. Yes, I can actually address that on rebuttal. I'll be happy to do that. The point is I think you may have a forfeiture problem, because you didn't raise it until after the decision went against you. Yes, I'll definitely address that on appeal. Let me ask you just to check. Correct. Is that a jurisdictional question? Huh? Is that a jurisdictional question here? As to whether or not— Whether you have the subject matter jurisdiction to do something, or the authority, because it's unconstitutional. I mean, if it is, you can raise it at any time. But look at that to see. That's an intriguing question, Judge Diaz, to bring up, that you didn't raise it. But I want to make sure we address it, because I don't want to leave here and say, well, in my head I'm going somewhere different than I think about that. Okay. It's not a subject matter jurisdiction question. Okay. I definitely will. I know I only have a couple minutes left, so I just wanted to address real quickly with the court, that even if this court were to find that the ALJ's opinion wasn't supported by substantial evidence, the denial, because he didn't go into more detail as to why he chose Dr. DuPont over Dr. Adcock, other than it was more explanatory, although I will, again, say that sometimes evidence is at equal pose, and that is something that an ALJ can say. But ALJ McGrath's award also has some very similar—not similar, but it has some flaws. For instance, discrediting Dr. Adcock because his opinion was against the regulations, and that's simply not true. Once the ALJ does, in fact, look at it as you would want them to do, what is our standard of review of what the ALJ did and what the board did? How do we review that? What is the court's scope of review?  Well, the court's scope of review— Do we give deference? Yes, to the ALJ's factual findings. The court steps into the place of the board, and they give deference. The court would look at whether or not the ALJ's decision was supported by substantial evidence and whether or not there were any errors of legal conclusion. So that's the board's role, and it's much like the Benefits Review Board, their role. And so what I'm saying is that they exceeded their authority by not reviewing—by overturning or vacating this award that was supported by substantial evidence. If this board—if this court believes that it wasn't supported— You're still talking about the first award. The first one. The second one— If we get from the first one— If we get to the second one— If we get from the first one to the second one, you've got a different problem. I have a different problem? Yes, because your first one is that they shouldn't have reversed the first one, but the second one has all this in it, so that's why I said you have a different problem. But at least your argument is different on the second one. So what is your argument on the second one? That it wasn't supported by substantial evidence.  Because he actually did go through each one, and now you are saying our review, given deference, that this is not supported by substantial evidence. Correct. And that's because of—that's because of, one, that the board was incorrect when it said— I'm sorry, I see that I'm out of time. I finished my thought. Go ahead. Okay. Was that, first, that Dr. Adcock's findings— the reason the AALJ rejected Dr. Adcock's findings is because they were against the regulation, because he did not consider that a nodule could be in the plura, but that's nowhere in the regulations. And so we would say that it's not awarded by—it's not supported by substantial evidence, or that there is an error in the legal conclusion, because when you look at the regulations itself, there's nothing in there that says that a nodule in the plura is complicated pneumoconiosis. Like I said, we depend on the medical community to tell us whether or not that is complicated. All right, thank you, Ms. Barber. Thank you. Mr. Casserly. Thank you, Your Honor, and may it please the Court. My name is Dave Casserly. I'm representing the Director of the Office of Workers' Compensation Programs. I'm here to answer or to address only one question that this Court has already answered in Keene, which is whether the appellant here must show harm resulting from the ALJ's double layers of removal protections. You're going to talk about the constitutional issue, and I take it your other counsel will talk about the merits issue. Yes, Your Honor. That's right, medical entitlement. Do you want to talk at all about forfeiture? Sure, Your Honor. We don't think this was forfeited. It's at JA 49 to 50. Well, let me put it this way. They raised a removal argument saying the ALJ's removal protections were unlawful to the judge in the first instance in a motion, as opposing counsel mentioned, and that's at pages 49 to 50 of the joint appendix. So we're not making any forfeiture argument on that ground. I will say, though, that they did not allege any harm there. It's not really a forfeiture issue, though, since they have never alleged any harm. They've never alleged any specific harm of the type that this court said would be required in Keene and that the Supreme Court said would be required in Collins v. Yellen. So that part isn't alleged. But, yes, they did raise the issue below properly, Your Honor. Your issue could be the big issue in this case, I mean, because to go in the direction of saying that these ALJs were unconstitutionally appointed, and you've got the 9th Circuit, the 11th Circuit opposed to one another in how that comes out, at least the 11th Circuit, maybe 11th, whatever, that deals with the SEC on it. But it's important because if we were to find or address that constitutional issue and say they were not lawfully appointed, it affects not only ALJs here, but I guess in all of those 2,000 or so ones in the social security cases and stuff, as to whether the president can fire them. And, of course, in Collins, the court did address it, didn't say no harm, but at the end of the day, the president fired that director. He then had the authority to fire anybody else that would come up there, which previous to Collins did not have. So that's why I say this is an important issue from that perspective if we go there with it. And if we don't, it still seems like to me there's something here. To address that, Your Honor, first of all, this court decided in Keene not to go there, as you put it, and there's no reason to do it. It would arguably be an advisory opinion if this court did, right? Maybe, but think about that because Judge Harris brought that up, which I think is important. And that is that Gordon Keene just says we assume that it's constitutional, or assuming it wasn't unconstitutional, there's no harm. Does that mean we've got to assume it? I think, yes, Your Honor. I mean a previous panel decision binds this panel, right? So Keene's – But they were only addressing the harm in that case. And the fact that that harm doesn't exist, they just chose not to. They didn't say they couldn't. They could have. And nothing in the case said you can't get to the constitutional issue. It chose to say assuming it was unconstitutional, we'll go there. And we do that all the time. I mean, on this, we assume stuff. And that doesn't mean that someday the court won't come back and not assume it but simply just address it. Yes, Your Honor, but my point here is why. Why would the court go and write an arguably advisory opinion about the removal protections afforded to ALJs when it cannot cause any harm in this case and under Keene cannot make any difference in the outcome of the case? You know, we went either way. That's what they do in Section 1983 cases all the time. There are cases, there are numerable cases in which the court will go ahead and decide that constitutional issue and then say it wasn't clearly established. It does that all the time. And even here, the reason you would do it is so you will know. If ALJs are unconstitutionally set up, there's a removal procedure that's unconstitutional on it, don't you think we ought to know the answer to that question as opposed to every time it comes up and says, well, they could be unconstitutional but there's no harm to you about it? Your Honor, first, Judge Diaz, I'd like to leave to take a little bit longer to answer this question as my time is just about out.  But I think, first of all, there's several things you asked there and I'd like to unpack them one at a time. First of all, Section 1983 cases are not this situation, right? This court has three times previously now. We've cited all cases of this, all three cases of this court, decided not to reach that constitutional issue and dispose of the case on harm's act. But we've done it three times in Section 1983 cases. No, in this context. Okay, so appeals from a benefit review board decision three previous times. So it may be another context. There are reasons to reach a constitutional issue, but that's not true here. But in terms of the shouldn't we know question, right? I mean, that's sort of, we don't, courts generally don't issue advisory opinions just so that litigants know the answer when it's not going to affect the outcome of the case. It would be more than advisory if this court holds that it is unconstitutional for an ALJB. It would be a lot more than advisory. But the harm you speak of is simply the president says, I want to fire that ALJ. And if that happens, then the harm would be established. Is that correct? That's what the court said in Collins v. Yellen. Yes, Your Honor. But going back to that, you know, other question you had previously. Yes, there is, unlike Section 1983 cases here, there is another mechanism, right, to find out whether these removal protections are constitutional, and that's the president can try to fire one of the officers at issue, which the president has done here successfully, right? It's a dual-layer removal protection. The president has removed a member of the MSPB, and the D.C. Circuit last week blessed that removal and said that was constitutional, that the Constitution allowed the president to do that, despite the protections available there. So there is another avenue here. It's not like in a situation where a police officer violates somebody's rights and you don't know if it's constitutional or not or whatever. Here, there is another way to know if these removal protections are constitutional. Also, aren't we likely to find out or at least get more information bearing on that question in June or July? I mean, I know we've all been busy, but didn't the Supreme Court just hear a case about removal protections? It seems like if there were ever a need for courts of appeals to jump in and start making some advisory law, this would not be the time because the Supreme Court is addressing the question even as we speak. Yes, Your Honor. I think slaughter would be instructive here. That's the case involving the FTC. But again, we don't need to even get to slaughter, right, because the D.C. Circuit already decided the Harris case, which is about the MSPB, which is the second player here. Well, we're bound by the Supreme Court in a way we're not by the D.C. Circuit. So just for our purposes, the Supreme Court is different. Yes, Your Honor. My point was just that slaughter may not fully answer every question. I know, right. I'm sure it may not, but I know that this all came up in argument. What are we going to do with the non-Article III courts? So we may get something on it. Yes, Your Honor. There's some deeper issues here dealing with the adjudicatory role of the ALJs as opposed to the type of case Collins, for instance, did not. They could have gone there. They didn't go there with the ALJs for that purpose. So there's something different here. This is a different case than I think what is currently before the Supreme Court or even in terms of whether Humphrey is still good law. But anyway, I'll leave that for another day. Before you sit down, I just want to briefly get back to this issue of forfeiture because I was going through the JA, the limited JA, I guess, which only deals with the order on granting benefits. But I did go back and look at the initial order. There was no mention of this constitutional argument for the ALJ or the Benefits Review Board. Wouldn't they necessarily have to have decided that issue before they got to the merits? So, Your Honor, just to go through the procedure, this is at JA like 49 to 50 is where the motion was raised to the ALJ in the first instance. The ALJ rejected that motion. I don't have the record site right off the top of my head. After that, there was no reason for the ALJ to address that issue again because the ALJ had already disposed of it. In the first appeal to the Benefits Review Board, there was no need for the Benefits Review Board to address that issue because it had been a denial. And under the Benefits Review Board's jurisprudence, a party does not have to cross appeal to raise alternate grounds for affirmance of an ALJ decision. So then the second time before the ALJ, after the board remanded, the second time, that's when opposing counsel again brought it up on behalf of Dominion, and that was, again, the appropriate time because you have to bring all grounds for vacature of the ALJ's decision to the board if it's your appeal. So that's what happened there. And so that's the procedure that was proper, and that's why the board didn't address it the first time through and why neither ALJ decision below addressed it because it was addressed in a separate order in response to the motion. Okay. Thank you. All right. Thank you, Your Honor. Mr. Alston. Good morning, Chief Judge Diaz, Judges Nguyen and Harris. My name is Brad Alston. May it please the Court. I'm here today representing the coal miner in this case, Mr. Daryl Mead. Judge Nguyen, I think you asked a really good question of my colleague on the other side. What's the standard of review for a reviewing court when an ALJ issues a factual finding? It's whether or not they're reviewing the ALJ-stated findings that are rational, supported by substantial evidence, and in compliance with applicable law. The Benefits Review Board has that exact same standard when it reviews a case from the ALJ. And the Benefits Review Board actually supplied a heading that said, Look, here's questions that we have that you did not address. And on remand, we need you to address those. Does the Benefits Review Board have to give deference to the ALJ? Absolutely, Your Honor. Do we have to give deference to the Benefits Review? This court doesn't give deference to the Benefits Review Board in the same way that it gives deference to the ALJ because the standards are the same. The Benefits Review Board reviews the fact finder's findings with rational, supported by substantial evidence, and in compliance with applicable law, just like this court does. The BRB in this court reviews on the same standard. The board has to give deference, but this court . . . I love the way this court has put it in previous cases. There's no duty of long-windedness on an ALJ, but the reviewing court needs to be able to understand what the judge did and why he did it. And so when the board issued the remand, they identified several different issues that were unresolved. As you put it previously, it was a very quick, a non-thorough factual finding. The judge basically said, we have Dr. Adcock on one side identifying a large opacity in the right upper lung zone near the azygous vein, which is greater than one centimeter. I do not believe that's complicated pneumoconiosis. We have Dr. DuPont identifying a large opacity in the right upper lung near the azygous vein. I do believe that's complicated pneumoconiosis. And the judge's scrutiny amounted to the following. They're equal, and that's that. That's not enough. That's what the board explained. And in fact, there were several factors that the board could not understand what the ALJ did and why the ALJ did it. The first was that the summary conclusion from Dr. Adcock did not identify the other opacities that Dr. DuPont identified within the lung. In other words, there was not only one opacity. Dr. DuPont said there were several opacities. And Dr. Adcock actually stated that he found other opacities that were of similar size, but he didn't reference those with any kind of specificity. So on review, the board said, well, what did you find with regard to those other opacities? We have nothing in the record that we can understand from what you made a factual finding on. Can I just ask a quick question? Yes. Those other opacities, those were not in the plural area. Is that right? That's what Dr. DuPont said, yes, Your Honor. That's correct. Now the big question for the ALJ the first time around was this one opacity in the right upper lung that was near the, I don't know if I'm saying this right, it's a zygous vein, A-Z-Y-G-O-U-S, I guess it's a zygous vein. And that opacity sort of formed the black and white almost conclusion from the ALJ, but that was really not a fair conclusion for my client because see, my client had an expert who was identifying multiple opacities within the lung and actually the totality of all of those complicated pneumoconiotic opacities was greater than five centimeters in size. And so on an ILO form, you actually add up all of those measurements and when it goes beyond five centimeters, it moves into a category B. So on the CT scan, Dr. DuPont identified several opacities. Now what the judge had before him the first time was Dr. Adcock stating there are other opacities within the lung of similar size, but no mention of what they were or why he believed specifically that those were parenchymal, or I'm sorry, pseudoplaques and not classified as complicated pneumoconiosis. Now the other problem with the ALJ's first decision was that he didn't consider the regulatory definition of what is complicated pneumoconiosis. My colleague on the other side says that the regulation does not specifically state that pseudoplaques are a definition of complicated pneumoconiosis, but the problem is the inverse of that is also true. It also does not say that pseudoplaques are not the definition of complicated pneumoconiosis. The definition of complicated pneumoconiosis is when an opacity that was caused by coal mine dust exposure forms that's greater than one centimeter. And there's also case law that has addressed this issue. The ALJ didn't address the case law. The ALJ didn't address the regulation. The ALJ did not even identify whether Dr. DuPont and Dr. Adcock were even discussing the same opacity in the right upper lung zone. So what the board did is exactly what a review in court should do. The board said, look, our duty is to see whether we can ascertain what the judge did and why the judge did it. We have the following questions. And it gave a list. And contrary to my colleague on the other side's argument in its brief, which I think it's stated a little differently here today, but throughout the brief, my colleague says that the board reversed the ALJ's decision. And that's completely inaccurate. The board did not reverse anything from the ALJ. What the board did was it said, we need you to identify the following problems that we see and the following factual findings that we cannot understand. And if you find the presence of complicated pneumoconiosis, you should award benefits. If you address all of these things and you still find there is not complicated pneumoconiosis, then you should deny. That's not a reversal. That's a remand. Can there be a case in which there is substantial evidence to support both positions? In other words, the court could have gone the other way and there would have been substantial evidence. Absolutely, Your Honor. And I think... And in this instance, if that is true, does the deference part of our review control that, that even though we might have decided differently because we believe there's substantial evidence for the other side, the deference drives us to affirm? Is that your position? Absolutely, Your Honor. I think that's completely fair on what a reviewing court did. And that's why this court, as the board did, affirmed the ALJ's second opinion. Because it becomes rather complicated and we can talk as though we know what we're talking about when we talk about paper-thin plural nodules counting as complicated pneumoconiosis. What do we do? I mean, black lung disease and type cases. What do we do when we have these cases and we have actual fact-finders who are listening to the evidence and who is trying to discern which way to go? And, yeah, I think if you look at this record, the other side makes a strong point. There is substantial evidence to go here. But it looks like there's substantial evidence to go... Someone makes the call. And then the deference part kicks in. It seems somewhat unfair because it depends on who's making that call. But that's true here, too. Depends on who's making the call here. But, you know, at least in terms of our job, when we're looking at it, is there substantial evidence, an irrational type of evidence, that supports this point of view? If so, we give deference. And is that in it, even though we might decide it differently? Judge Winn, I think that's a fair point, and I think you've identified the very issue that's at the core of this case. But here's what you need to think about in this case. If this administrative law judge, the first time around, would have fully explained his findings and would have made it to where a reviewing court would understand what this judge did and why he did it, then the deference should have been applied. But when a reviewing court cannot read the ALJ's opinion and understand, and I just identified there's about eight different things that the Benefits Review Board said, we don't know what you found here. We don't know what you were saying here. You didn't look at this here. So there were problems with the ALJ's initial decision. And in fact, when the board remanded the case back to the ALJ, it's the same judge. But when the judge looked at the evidence under the proper standard, which requires a greater than one centimeter opacity, that is complicated pneumoconiosis. When the ALJ looked at the medical reports and the fact that Dr. Adcock only discussed the one large opacity and Dr. DuPont discussed several others, when the judge looked at all that, the judge actually changed his mind because he reviewed the case the way the ALJ has to review the case and the way that he has to explain himself. So when the board reviewed it for a second time, it could clearly see what the fact finder did and why the fact finder did it. This court absolutely needs to give deference to the fact finder. The counsel note sign puts a lot of emphasis on that first one. And I get it. The reason is because if the first one had gone through, deference was due to ALJ. But it is interesting that when it goes back to the same ALJ, if that ALJ had done it correctly, even in their mind, the redo of it seems like it would have given the same result. It wouldn't have come with a different result because he looked at the evidence or he did it. Unless he looked at it in a different light as opposed to what I previously indicated, it appears to me, he looked and says, okay, this doctor says this, this group of doctors says this. It's an equipose. Okay, you don't get any type of presumption. Judge Wynn, I think you're right, and I appreciate what you're saying. It is an interesting procedural history of the case, but I think it goes back to the point you made. The first time, the judge just basically said, we've got one doctor saying this. We've got another doctor saying the opposite. I don't know there's equipose. Claim it didn't meet his burden. But the thing is, when the board actually considered the case to try to figure out what the judge did and that bald declaration was insufficient, as I've said, the board said, well, what about this? What about the fact that Dr. DuPont identified multiple opacities and Dr. Adcock didn't even discuss those? What about the fact that you didn't look at the case law that has also interpreted pseudoplaques as potentially complicated pneumoconiosis? What about the regulatory definition of complicated co-workers' pneumoconiosis? What about the fact that we have other medical reports that are in the case that also provide guidance? Judge, when you look back, the board said, Judge McGrath, when you look at all these things, you've got to explain your findings. And on the second decision, if you'll read the two decisions, you will see that the second time around this administrative law judge went into great detail. I mean, he considered everything. Case law, regulation, every single medical report. And his findings were different because he actually looked at the medical reports under the proper legal standard. And when the board got the case for a second time, that standard that I addressed at the outset, can a reviewing court understand what the ALJ did and why the ALJ did it? The board was able to do that the second time because there was actually an explanation from the fact finder. That is the problem, Judge Winn. The first time around, the reason that the first decision could not be affirmed, and I'm all for deference. I mean, I'm always here. I've been here a lot arguing to this court on black lung cases, and I always lead with that. It's not this court's role to go in and reweigh what the fact finder did. If it's supported by substantial evidence, this court can see what the judge did and why the judge did it, so you have to affirm. I argue that to you all the time. I've been up here a lot arguing that. But the board standard is that same exact standard. And on the first ALJ's decision, the board could not do that. That's why it remanded. It identified eight different questions that were left unresolved. There was no scrutiny of evidence. There was no consideration of regulation, case law. There was no factual finding that the board could understand. And as a reviewing court should, when it can't understand what the lower court did, it sent it back. And the most important thing here is it didn't reverse. It specifically said, look, you can find that the claimant failed to meet his burden. But as a reviewing court, we need to know why. Why did the claimant meet his burden? And when the case went back to the ALJ for the second time, the judge did as he was supposed to do. He fully considered the case and reached his findings. So I know I'm almost out of time. I'll just conclude with this. We believe that the ALJ's second decision in order to awarding benefits is rational, supported by substantial evidence, and in compliance with applicable law. We ask this court to affirm that decision. Does the court have any additional questions? Thank you, Mr. Austin. Thank you. I believe that Mr. Casserly answered all of your questions on forfeiture. I'm not sure about that because I went back and looked at the record.  It appears that the motion that you made was primarily one challenging the appointment of the ALJ, not removal. If you look on JA 49, there is actually a little flick. On five, yeah. The ALJ didn't address it in his order. Yeah, and I don't believe the order is actually in the joint appendix itself, and I'm sorry for that. Well, the order is actually. It follows that, let me pull it up here. Oh, yes, the order denying is on JA 51, correct. And it's exclusively deciding the appointments clause issue, not any reference to removal. Right. I guess the question is, again, has that argument been forfeited? I don't believe so, Your Honor. I think that we were required to raise the argument before the ALJ, and the ALJs have taken the position that they can't rule on this issue and so I don't believe that there's any forfeiture because we raised it. The ALJ doesn't have the expertise, and they have said that many times to address the constitutional question, and the board makes those statements, too. And so when we really get to the Fourth Circuit is when these constitutional issues are important for us to address because this is the court that can address those, and we do believe that it should be addressed. I'm sorry. I thought the board did address the issue the second time. The second time around?  I don't understand the board. In its opinion?  I mean, it cited its prior precedent that has addressed this issue and agreed with the Ninth Circuit. I don't understand the board to be standing down from this issue, but maybe. Okay. And I might have read it wrong, and I'm sorry if I did, Your Honor.  Okay. I believe that this court is the court with the expertise to address that constitutional question, and that's why we brought it here, but I do not believe that it was forfeited in any way, Your Honor. I do want to address something that Mr. Austin said. I know I have a limited amount of time, so I don't want to gloss over anything that the judges really want to talk about. But Mr. Austin said that the reason that A.L. J. McGrath's decision changed in the award rather than the denial is because he actually looked at the rector. Although A.L. J. McGrath does not go into great detail as to why he believed Dr. Adcock's was proved that there was no complicated pneumoconiosis. Dr. Adcock was very specific that pseudoplaques are not pneumoconiosis. In the new award, there was not a lot of detail other than about the plura, and that was something, nodules in the plura, that was something the board brought up. So if the board had just said, as Mr. Austin did today, we don't think that you explained this well enough. I need you to go back. I need you to look at the CT scans. I want you to help us understand because you didn't provide us any good rationale. But they didn't do that. What they said is you need to look specifically at the location of the nodule and the shape of the nodule. And that's really what a medical expert does for us. A medical expert is the one that explains what the medical community believes to be pneumoconiosis, and that's what clinical pneumoconiosis is. And so that's what the medical community has to do. So the board's remand really specifically focused on whether or not a nodule in the plura can be complicated pneumoconiosis. And like Mr. Austin said, there's nothing in the regulations to say it is. There's nothing in the regulations to say it's not. And so you cannot say Dr. Adcock's opinion was against the regulations because it wasn't. There's nothing in the regulations that require him to say that pseudoplaques are complicated pneumoconiosis because that's not true. I just want to make sure I understand your position on this initial remand. So is your argument that, you know, the board might have said it was just remanding for a better explanation, but, in fact, it was like kind of saying what outcome it wanted?  Okay. If I were to take the board at its word and just assume the board was actually saying, like, it doesn't look to us like you have actually looked at the content of these experts' opinions and choosing between them or sending it back, come back to us with more, that would be okay in your view?  I think what Judge Wynn had said during Mr. Austin's oral arguments is that he looked at it in a different light. Suddenly we're now looking at the board as saying nodules in the plura can be excluded from the regulations. They send them over to Fennel, which was the quickly re-definition. Can I just add that Dr. Adcock thinks that if it's, I'm so out of my expertise here, so forgive me, but as I understood it, Dr. Adcock thinks if they're in the plural area, they can't be complicated pneumoconiosis. Is that not correct? No. I'm out of time, so I just want to make sure that I can answer. Please. Okay. No, what he said is that a pseudoplaque is not complicated pneumoconiosis. Now, a nodule in the plura, he never said if the nodule is in the plura, it is not complicated pneumoconiosis. And that's not your position either? No. Our position is that a pseudoplaque, that the experts, Dr. McSherry, Dr. Adcock- Okay, but your position is not that it matters whether it's in the plural area or not? No, no. It's just that if you look at Dr. Adcock, Dr. McSherry's explanations, they fully explained why it's not complicated pneumoconiosis. And you can't say that's against the regulations because it's not. So, I know I'm out of time, so I just would like this court, we ask this court to reinstate the ALJ's original denial and to overturn the board's decision awarding this claim. Thank you very much.  Thank you, Ms. Partridge. All right. Thank you, counsel, for your arguments. We'll come down and greet you and move on to our final case.
judges: Albert Diaz, James Andrew Wynn, Pamela A. Harris